UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MARK W. CUTLER,<br><br>        Plaintiff,<br>  vs.<br><br>KOOTENAI COUNTY SHERIFF"S<br>DEPARTMENT, et al.,<br><br>        Defendant. | NO. CV-08-193-N-EJL<br><br>**MEMORANDUM ORDER** |

Pending before the Court in the above-entitled matter are Defendants'
Renewed Motion for Summary Judgment (Docket Nos. 37 and 56) and Plaintiff
Mark Cutler's ("Cutler") motions for appointment of counsel (Docket No. 65) and
order to show cause (Docket No. 62).  The Court has previously denied numerous
requests by Plaintiff for appointment of counsel and summarily denies the current
motion for counsel on the same grounds as previously set forth.  As to the motion
for an order to show cause, such relates to the payment of his filing fee and
Plaintiff needs to contact prison officials to work out the details of partial
payments up to 20% of the inmate's income in his prison account.  Accordingly,
this motion is also denied without prejudice.

Page 1

As to the motion for summary judgment, having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.[1]  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## BACKGROUND

Plaintiff is an inmate in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at Idaho State Correctional Institution ("ISCI"). At all times relevant to this action, Plaintiff was housed at the Kootenai County Jail.  Plaintiff was housed at the Kootenai County Jail from August 11, 2006 until January 8, 2007.  At the time of the relevant allegations in the Complaint, Plaintiff was being confined post-conviction.  Defendants are Kootenai County Sheriff Department, Kootenai County Sheriff Rocky Watson, and Sheriff's Deputies Spencer Mortensen ("Mortensen") and Shane Moline ("Moline").

---

[1]The Court notes that Plaintiff filed numerous responses to the motion for summary judgment.  The Court will consider all the responses this time, but for future reference, the Plaintiff is required to comply with the pleading requirements set forth in Dist. Idaho Loc. Civ. R. 7.1 and sur-replies will not be considered unless leave to file an additional response to a motion is allowed by the Court.  Plaintiff is reminded pro se litigants are held to same procedural rules as counseled litigants.  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

On January 6, 2007,[2] Plaintiff was involved in a fight with another inmate. Plaintiff alleges that the other inmate attacked him and that Plaintiff fought back to defend himself.[3]   Deputy Moline and Deputy Linda Simmons ("Simmons") responded to the scene. Cutler was ordered to freeze by the Deputies.  Plaintiff alleges that he did so, but that after he froze, he was shot with a taser twice: once by Deputy Moline and then by Deputy Mortenson after Plaintiff was immobile from the first taser.  Defendants Moline and Simmons indicate in their affidavits that Plaintiff did not obey the order to freeze, but instead kept fighting with the other inmate.   Defendants also claim that Defendant Moline used the taser on Plaintiff only once, but that the two taser probes hit the Plaintiff in the left shoulder and the left buttocks.  Deputy Simmons indicates in her affidavit that only Moline fired his taser and that she was not carrying a taser as she had not completed the requisite certification process.   Moline and Simmons both maintain Deputy Mortenson did not fire his taser as he responded to the disturbance after Moline and Simmons.  The Affidavit of Thomas Stangeland, Docket No. 37-5, includes Sgt. Stangland's investigation of the allegations in the Complaint.  Sgt. Stangeland

---

[2]Plaintiff maintains in his affidavit that the fight was on January 5, 2007, but the jail records and all reports prepared shortly after the incident indicate that the fight took place on January 6, 2007.

[3]Plaintiff repeatedly argues to the Court that he did not start the fight with the other inmate. For purposes of the claims against the Defendants, it is not relevant who started the fight.  It is only relevant for purposes of the § 1983 claim that there was an altercation with Plaintiff and another inmate that jail deputies responded to and which resulted in the discharge of a taser.

indicates in his report that Deputy Mortenson was not certified to carry a taser and that he did not deploy a taser at Cutler.  Id.

Plaintiff alleges as he fell to the floor after being shot by the taser, he re-broke his left hand[4] causing permanent damage and pain and that he did not receive any medical treatment for his hand injury.  Defendants maintain that Plaintiff slowly slid down the wall to the floor and did not complain of any injuries to his hand.

It is undisputed that Defendants Moline and Mortensen took Plaintiff to safety cell 1 at 1720 hours, also known as a "rubber room."  The inmate Cutler was fighting with was taken to safety cell 3.  An inmate is placed in a safety cell when an inmate poses a risk to themselves or others.  Plaintiff alleges that he was placed naked into this room and denied medical treatment for his injuries to his hand.  Defendants maintain Plaintiff's clothes were never taken from him, however, he was asked to remove his shirt in order to allow Sgt. Merrill to take photos of the puncture wounds from the taser and the puncture wounds were disinfected by staff.  Plaintiff alleges in his Complaint the temperature in the room was 50 degrees[5] and he was not given a blanket.

---

[4]The Plaintiff claims his left hand was "re-broke" but the Court is unaware of when the Plaintiff broke his hand the first time.  It appears the first injury to Plaintiff's hand is not a result of the actions of deputies at the Kootenai County Jail.

[5]In Plaintiff's memorandum in opposition to the motion for summary judgment, Cutler indicated the maximum temperature was 60 degrees in the safety cell.  Docket No. 61, p. 1.  In Plaintiff's Affidavit, Docket No. 67, he indicates it was a low cell temperature of just over 60 degrees "due to it being January and the cell was adjacent to the garage entrance."

Defendants acknowledge that when an inmate is placed in a safety cell, there is no bed or sheets provided, but note there are no records of Plaintiff complaining about the temperature of the room, requesting additional clothing, requesting medical attention for his hand or that Plaintiff was naked in the safety cell. Defendants offer jail records which indicate the Plaintiff was checked numerous times during his 16 hours in the safety cell, that he was offered and accepted some meals, and that the medical cart provided Plaintiff with his normal medicines at 2212 hours on January 6, 2007 and at 0830 hours on January 7, 2007.

It is undisputed that Plaintiff was moved from the safety cell to the court holding cell at 0845 hours on January 7, 2007. The court holding cell has bunk, blanket, toilet and sink. A medical cart visited Plaintiff at 1345 hours and 2023 hours on January 7, 2007. Shortly after Plaintiff refused breakfast on January 8, he was placed on an IDOC transport. The records reflect that for the time the Plaintiff was in the safety cell and the holding cell, he was seen or checked by staff 57 times for various reasons and there is no record of any medical complaints written or oral regarding Plaintiff's hand. Since Plaintiff was in custody of the jail from August 11, 2006 until January 8, 2007, and was on regular medicines, it is presumed he was familiar with the procedures to request medical attention in the jail.

Plaintiff has provided some medical records from IDOC. On January 11, 2007 Plaintiff wrote a medical request for ibuprofen for his chronic H/A [head ache]. On January 23, 2007, he wrote a medical request indicating that he fell to

the ground while at county jail and needed his hand x-rayed.  It is unclear from the medical records provided as to what medical care Plaintiff received regarding his hand after he was transported to IDOC's custody.  In June of 2008, there is a IDOC medical record that indicates his hand had a "left boxers fracture" but that was approximately one and half years after the fight at the county jail.

Plaintiff brings Eighth and Fourteenth Amendment claims against Defendants Mortensen, Moline, Watson, and Kootenai County Sheriff's Department.   He sues the individuals in their personal and official capacities.  His claims fall into three categories:  (1) excessive force claims for the use of the taser; (2) claims that he did not receive adequate medical care after the incident; and (3) inhumane conditions claims that he was wrongly placed naked into the rubber room.  Defendants move for summary judgment on all three claims.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and

upon which the non-moving party will bear the burden of proof at trial. See,

Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails

to make such a showing on any essential element, "there can be no `genuine issue

of material fact,' since a complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." Id.

at 323.[6]

        Moreover, under Rule 56, it is clear that an issue, in order to preclude entry

of summary judgment, must be both "material" and "genuine."  An issue is

"material" if it affects the outcome of the litigation.  An issue, before it may be

considered "genuine," must be established by "sufficient evidence supporting the

claimed factual dispute .  .  . to require a jury or judge to resolve the parties'

differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st

Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289

(1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car

Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir.

1989).

---

   [6] See also, Rule 56(e) which provides, in part:

        When a motion for summary judgment is made and supported as provided
        in this rule, an adverse party may not rest upon the mere allegations or
        denials of the adverse party's pleadings, but the adverse party's response,
        by affidavits or as otherwise provided in this rule, must set forth specific
        facts showing that there is a genuine issue for trial.  If the adverse party
        does not so respond, summary judgment, if appropriate, shall be entered
        against the adverse party.

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

Plaintiff was advised of the summary judgment rule requirements in the Notice

(Docket No. 38) sent to the Plaintiff by the Clerk of Court.

## ANALYSIS

1.  Constitutional Claims and Section 1983 Claims

The Constitutional violations and the 1983 claims are intertwined. Basically, Plaintiff is claiming Deputies Moline and Mortensen used excessive force by using the taser to subdue him, all Defendants failed to provide proper medical care and treated Plaintiff inhumanely by placing him in the safety cell and removing his clothes.

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties.  See Wyatt v. Cole, 504 U.S. 158, 161 (1992).  To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law.  Id.   Acting under color of state law is "a jurisdictional requisite for a § 1983 action."  West v. Atkins, 487 U.S. 42, 46 (1988).  In this case, it is not disputed that Deputies Moline, Simmons and Mortensen were acting under color of state law when they responded to the disturbance in the jail.  Therefore, the question becomes, did Defendants' actions deprive Plaintiff  of a right, privilege or immunity secured by the Constitution or federal law.

2. Qualified Immunity

Defendants have raised the defense of qualified immunity.  Police officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982).  The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."  Saucier v. Katz, 533 U.S. 194, 200, 202 (2001).  On the other hand, this privilege allows redress where clear wrongs

are caused by state actors.  Id.  "The privilege is an immunity from suit rather than

a mere defense to liability, and like an absolute immunity, it is effectively lost if a

case is erroneously permitted to go to trial."  Id. at 200-01.  "As a result, [courts]

have repeatedly stressed the importance of resolving immunity questions at the

earliest possible stage in litigation," long before trial.  Id. at 201, see also Act

Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (citing Hunter v.

Bryant, 502 U.S. 224 (1991)).

        The initial question in determining whether an officer is entitled to qualified

immunity is whether, taken in the light most favorable to the party asserting injury,

the facts alleged show that the defendant's conduct violated a constitutional right.

Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177,

1183 (9th Cir. 2002).[7]  If not, "there is no necessity for further inquiries concerning

qualified immunity."  Saucier, 533 U.S. at 201. If, however, a violation could be

_____

        [7]This structured two-step analysis, originally required by Saucier v. Katz, 533
U.S. 194 (2001), is no longer mandatory in all cases.  See Pearson v. Callahan, 555
U.S. ___, 129 S. Ct. 808 (2009).  In Pearson, the Supreme Court recently held:

> On reconsidering the [two-step] procedure required in
> _Saucier_, we conclude that, while the sequence set forth
> there is often appropriate, it should no longer be regarded
> as mandatory.  The judges of the district courts and the
> courts of appeals should be permitted to exercise their
> sound discretion in deciding which of the two prongs of
> the qualified immunity analysis should be addressed first
> in light of the circumstances in the particular case at
> hand.

Id. at 818.  Here, this Court will proceed in the traditional two-step format.

Page 10

established under the facts presented, the next step is to determine whether the right was "clearly established."  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208.  Plaintiff bears the burden of establishing the rights violated were "clearly established."  Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Therefore, the Court will analyze the specific constitutional rights Plaintiff alleges were violated by Defendants.

3.  Excessive Force Claim Due to Use of Taser by Deputy Moline

Plaintiff claims the Defendants violated his Eighth and Fourteenth Amendment rights when responding Deputy Moline used excessive force in the form of the taser in subduing Plaintiff.  While Plaintiff maintains in his Complaint he was shot with a taser twice:  once by Deputy Moline and once by Deputy Mortensen, the Plaintiff has not rebutted the jail records and reports drafted immediately after the altercation between Plaintiff and another inmate that establish only Deputy Moline fired his taser and Deputy Mortensen did not have a

taser.  The affidavits of inmates who observed the use of the taser also indicate
Cutler was only tased by Deputy Moline.  <u>See</u> Docket No. 58.

Defendants acknowledge the taser has two probes each time it is fired and
that is why Plaintiff was punctured in the left shoulder and left buttocks from one
firing by Deputy Moline.

In response to a motion for summary judgment, a Plaintiff cannot simply
restate his or her allegations from the complaint.  <u>See</u> <u>Beard v. Banks</u>, 548 U.S.
521, 534, (2006) (plurality opinion) (citing Fed. R. Civ. P. 56(e)).   Federal Civil
Rule 56(e)(2) provides that "[w]hen a motion for summary judgment is properly
made and supported, an opposing party may not rely merely on allegations or
denials in its own pleading; rather, its response must--by affidavits or as otherwise
provided in this rule--set out specific facts showing a genuine issue for trial. If the
opposing party does not so respond, summary judgment should, if appropriate, be
entered against that party."  If the moving party's statement of facts are not
controverted in this manner, a court may assume that the facts as claimed by the
moving party are admitted to exist without controversy.  <u>Beard</u> 548 U.S. at 527.  In
this case, Plaintiff has not responded by affidavit or otherwise regarding the facts
presented by Defendants in the form of affidavits of the responding deputies that
only Deputy Moline fires a taser and such taser was only fired once.  Therefore,
the Court does not have to accept as a disputed fact for purposes of the motion for
summary judgment the allegations in the Complaint that Cutler was shot twice by
two different deputies.

Having determined there is no genuine issue of material fact regarding the fact that Plaintiff was only shot with a the taser once, the Court will determine if the use of the taser by Defendant Moline was excessive force under the Eighth Amendment.[8]  When a prisoner asserts an excessive force claims against jail officials, the "cruel and unusual punishment" clause of the Eighth Amendment is implicated.  Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).   In Clement, the Court defined the standard for excessive force in the prison context as follows:

> Force does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not "maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  This standard necessarily involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction.  Graham, 490 U.S. at 398.  For this reason, under the Eighth Amendment, we look for malicious and sadistic force, not merely objectively unreasonable force.  Under this heightened standard, the officials' liability for excessive force in this case is much more doubtful.

Id.

In Whitley v. Albers, 475 U.S. 312 (1986), the Supreme Court set forth factors to consider when evaluating an excessive force claim: 1) the need for the

---

[8]On a claim of excessive force, the protections of the substantive due process clause of the Fourteenth Amendment are coextensive with the protections of the Eighth Amendment's cruel and unusual punishment clause. Whitley v. Albers, 475 U.S. 312, 324-27 (1986).   That is, conduct which violates the Fourteenth Amendment standard of "shocking the conscience" also violates the Eighth Amendment standard that punishment should not be "repugnant to the conscience of mankind."  Id.  Therefore, where the basis of a claim is substantive and not procedural, and is also alternatively based upon the Eighth Amendment, the court need not independently consider Fourteenth Amendment grounds.  Id.

application of force; 2) the relationship between the need to use force and the amount of force used; 3) the threat perceived by the officer; 4) any effort to temper the severity of the forceful response; 5) the extent of the injury inflicted; and 6) whether the force was applied for a legitimate purpose.  See also Hudson v. McMillian, 503 U.S. 1, 7 (1992).

In the present case, Defendants presented affidavits that the taser was used to stop the fighting between two inmates when Cutler failed to stop hitting the other inmate when ordered by Deputy Moline to stop hitting the other inmate. Plaintiff does not dispute that he was fighting when the deputies arrived in the jail pod or that tasers can be used to stop inmate fights.  Rather, Plaintiff maintains in his affidavit, Docket No. 67, that he had stopped fighting when ordered and backed away from the other inmate.  Therefore, Plaintiff argues the deputy's use of the taser was purely to inflict punishment.  Plaintiff offers the affidavits of other inmates who observed the incident and state Cutler had backed away after being ordered to stop and then he was tasered by Deputy Moline.  See Affidavits of Robert Oduane (Docket No. 67-3) Jeremy Brown (Docket No. 67-3).[9]  See also the Affidavit of Chad Tipton (Docket No. 67-3).

As to the first factor, the Court finds the need for the application of the force is disputed in part.  The use of a taser to break up an inmate fight is reasonable, however if Plaintiff had stopped fighting and was responding to oral

---

[9]It is interesting to the Court that the two affidavits use the exact same language to describe the incident.

commands, then the need for the application of force may not have been justified. The Court notes that the perceptions of both the responding deputies and other inmates to the same facts can differ without affecting the credibility of either of the parties.  The timing of a deputy in responding to a fight in a jail requires split second decision making and the fact that Plaintiff says he stopped fighting and the deputy saying Cutler did not stop before he fired the taser could be the result of a very limited break in time between the order to stop, Plaintiff stopping his hitting of the other inmate and the officer's decision to fire his taser to end the altercation before a more serious situation resulted with the other inmates in the pod. Viewing the facts in a light most favorable to Plaintiff, the Court finds this first factor is not determinative of whether the use of the taser violated Plaintiff's constitutional rights.  The Court will examine the other factors to determine if the use of the taser was a violation of Plaintiff's Eighth Amendment rights.

As to the second factor, the relationship between the need to use force and the amount of force used, the Court finds that the amount of force necessary and the amount of force used was not excessive.  Deputy Moline only fired the taser once for one 5 second burst.  After Cutler went to the floor he was immediately handcuffed and removed from the area and his puncture wounds treated.  Even assuming Plaintiff's facts that he had stopped fighting, the taser could have been used by the deputy to prevent further fighting and the firing of one taser does not rise to the level of  cruel or unusual punishment.

As to the third factor, the threat perceived by the officer, the Court finds Moline's affidavit, Docket No. 37-4, sets forth the threat perceived.  Deputy Moline was concerned that the fight between the two inmates could escalate and injury other inmates and jail staff.  It is undisputed there were other inmates in the pod where the fight was occurring.  While the other inmates did not join the fight, cause of the fight was unknown the officer when he and Deputy Simmons initially responded.   The Plaintiff is unable to rebut the perceived threat by Deputy Moline as it goes to the officer's state of mind so this factor supports the Defendants' argument that the force was not in violation of constitutional rights as the Deputies responding to the inmate altercation perceived a threat.

As to the fourth factor, any effort to temper the severity of the forceful response, both Plaintiff and Deputies Moline and Simmons indicate that the officer tried to use verbal instructions to stop the fighting before he fired his taser.  Therefore, the use of the taser was not a "first" resort and the use of a taser actually reduces the severity of the forceful response as the person becomes immobile and cannot resist the jail staff.

As to the fifth factor, the extent of the injury inflicted, the Court finds the injury inflicted by the taser probes was minimal.  The puncture wounds were photographed and were treated with disinfectant.  There are no records of medical requests by Plaintiff at the jail or IDOC regarding the puncture wounds.  As to the injury to Plaintiff's left hand, the injury is disputed by the parties.  While it is true an person shot with a taser can injure themselves as they fall to the ground, the

firing of the taser did not purposefully inflict this injury and Plaintiff did not make a written medical request regarding his hand until 17 days after the incident.

As to the sixth factor,  whether the force was applied for a legitimate purpose, this is disputed by the parties.  Cutler maintains the taser was used after he stopped fighting with the intent to punish or hurt him, not to stop the fight. Defendant Moline claims the taser was used for a legitimate purpose to stop inmate fighting after the inmates failed to stop after being ordered to do so.  Since the fighting was undisputed, the Court finds there was a legitimate purpose for the use of the taser regardless of whether or not Cutler had stopped hitting the other inmate.

In considering the facts in a light most favorable to Plaintiff and the six factors, the Court finds there is no genuine issue of material facts and no reasonable juror could find the use of the taser to break up an inmate fight after having given oral commands was unreasonable based on threat perceived by the responding deputies.  Moreover, the Plaintiff has failed to present any evidence that Deputy Moline acted maliciously or sadistically for the very purpose of causing harm to Plaintiff.  Accordingly, the Court finds Defendants are entitled to summary judgment on the Plaintiff's claim his Eighth Amendment rights were violated by the use of the taser and all claims should be dismissed against Deputy Moline for his use of the taser.

B.  Defendant Mortensen's Involvement

The Court finds as a matter of law, the claims against Defendant Mortensen for excessive force should be dismissed as it is uncontroverted that Mortensen did not fire a second  taser at Plaintiff during the incident on January 6, 2007. Accordingly, all claims should be dismissed against Deputy Mortensen.

C.  Plaintiff's Claims for Lack of Medical Treatment

Cutler's second claim is that he was denied medical treatment for his injured hand at the jail.[10]  To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."  Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citing Estelle v. Gamble, 429 U.S. 97, 103-04 (1976)).  The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Id.

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . .

---

[10]Cutler also argues he was denied proper medical care when he was transferred to IDOC, but this claim cannot be addressed as IDOC officials are not defendants in this matter.  Accordingly, the Court will limit its inquiry to whether Cutler was denied medical care at the Kootenai County Jail on January 6 - 8, 2007.

> . [t]he existence of an injury that a reasonable doctor or patient
> would find important and worthy of comment or treatment; the
> presence of a medical condition that significantly affects an
> individual's daily activities; or the existence of chronic and
> substantial pain.

McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other*

*grounds*, WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a

serious medical condition or when an official is "aware of facts from which the

inference could be drawn that a substantial risk of harm exists," and actually draws

such an inference.  Farmer v. Brennan, 511 U.S. 825, 838 (1994).  Differences in

judgment between an inmate and prison medical personnel regarding appropriate

medical diagnosis and treatment are not enough to establish a deliberate

indifference claim.  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Mere indifference, medical malpractice, or negligence will not support a

cause of action under the Eighth Amendment.  Broughton v. Cutter Lab, 622 F.2d

458, 460 (9th Cir. 1980).  A mere delay in treatment does not constitute a violation

of the Eighth Amendment, unless the delay causes serious harm.  *Wood v.*

*Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).  If the defendants are able to

show that medical personnel have been "consistently responsive to [the inmate's]

medical needs, and there has been no showing that the medical personnel had

"subjective knowledge and conscious disregard of a substantial risk of serious

injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. Toguchi v. Chung, 391 F.3d 1051, 1061 (9th Cir. 2004).

In the present case, Defendants argue that Plantiff never complained about his left hand while he was in the custody of Kootenai County Jail on January 6 8, 2007. Plaintiff has failed to provide any evidence that he made written or oral requests for medical care to deputies who checked on Cutler while he was in the safety cell and holding cell, deputies who delivered meals to Cutler or to medical cart personnel who delivered his regular medicines. Plaintiff's affidavit merely states he "received no treatment medical or psychological for my broken hand." Plaintiff does not say his written requests for medical treatment on his hand were ignored. Plaintiff had been housed at the Kootenai County Jail for over an extended period of time and based on the treatment he received for his other medical needs, it is clear from the record he was aware of how to make a written request for treatment and failed to do so.

There are 57 contact with Plaintiff by jail personnel from the time he was placed in the Safety Cell until he was transferred for transport to the IDOC. There are no notes of any request for medical care for his hand in all these contacts with Cutler. The fact that Cutler waited to make a request for medical treatment regarding his left hand at IDOC until January 23, 2007 supports that he did not promptly make a request for treatment since he was in IDOC care starting on January 8, 2007 and his January 11,2007 medical request was not related to his left hand, but to his head aches. For these reasons, the Court finds there are no

Page 20

genuine issues of material fact related to whether Cutler requested treatment for his hand and the Defendants are entitled to summary judgment as there is no evidence Defendants were deliberately indifferent to Cutler's serious medical needs regarding his left hand on the dates he was in the safety cell or holding cell.

### D.  Inhumane Treatment Claim by Placing Plaintiff in Safety Cell

Cutler's third claim is that he was treated inhumanely when he was placed in the safety cell or rubber room and his clothes were removed and he was not given a blanket or sheets to stay warm.  Defendants contend Cutler had his clothes, but do not dispute he was not given sheets only that he did not request more clothes or sheets and that "[b]ecause many of the prisoners who are contained in Safety Cells are suicidal, the room is completely empty, and the prisoner is not provided sheets."  Affdiavit of Thomas Stangel, 37-5, p.4, ¶ 16.

For an Eighth Amendment claim, a plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal citation omitted).  A plaintiff must also show that defendants were deliberately indifferent to plaintiff's needs.  Deliberate indifference exists when an official knows of and disregards an unconstitutional condition or when the official is aware of facts from which the inference could be drawn that a risk of harm or violation exists, and actually draws the inference.  Farmer v. Brennan, 511 U.S. at 837.

Page 21

"Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets."   Wilson v. Seiter, 501 U.S. 294, 304 (1991).

The Supreme Court has stated that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by prison officials' "deliberate indifference to the inmates' health or safety."  Hope v. Pelzer, 536 U.S. 730, 736-37 (2002) (internal citations and punctuation omitted.  Further, in McKune v. Lile, 536 U.S. 24 (2002), the Court noted that, in determining whether a constitutional claim lies, "[c]ourts must decide whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not."  *Id.* at 42.  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987).

Whether a particular event or condition in fact constitutes "cruel and unusual punishment" is gauged against "the evolving standards of decency that mark the progress of a maturing society."  Hudson v. McMillian, 503 U.S. 1, 8, (1992) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

In this case, the photos of Plaintiff do show him without his shirt.  Jail officials claim Cutler was given his clothes to put back on after the photos of the taser probe punctures were taken. Plaintiff states in his affidavit he was housed within the Safety Cell for "over 16 hours without clothing, a toilet, and with a cell temperature, due to it being January and the cell was adjacent to the garage entrance, of just over 60 degrees F."  Docket No. 67.  Because Defendants have not indicated that they believed Cutler to be suicidal, it appears he was placed in the Safety Cell after the inmate fight to prevent him from hurting other inmates, not himself.  Therefore, it is unclear why the jail would not have provided a blanket or sheets for the 16 hours Cutler was in the Safety Cell in January.

As to the temperature in the Safety Cell, Defendants have not provided any information regarding the actual temperature the cell is kept at in the winter. Plaintiff's affidavit regarding the temperature of the cell is based on pure speculation and is not proper evidence to establish an uncontroverted fact. Plaintiff has alleged the temperature was 50 degrees, 60 degrees and just over 60 degrees in different pleadings.  Clearly, Plaintiff does not have any evidence as to what the actual temperature of the Safety cell, which is covered in rubber, was on January 6, 2009.

The Court finds even assuming the Plaintiff's claim of being placed in the Safety Cell naked is true, it was a *de minimis* violation since there is no evidence requests for clothes or blankets were denied, it only last 16 hours and was not a pattern of treatment, and the temperature in the Safety cell has not been established

Page 23

to have been so low as to endanger Plaintiff's health.  Simply put, the allegations do not arise to the level of a constitutional violation. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).


   E.  Kootenai County Sheriff's Department

   Cutler brings suit against the Kootenai County Sheriff's Department and not against Kootenai County.  Kootenai County Sheriff's Department, however, is not a legal entity, Maxwell v. Henry, 815 F. Supp. 213, 215 (S.D. Tex. 1993), nor is it a "person" for purposes of § 1983 litigation.  Vance v. County of Santa Clara, 928 F. Supp. 993 (N.D. Cal. 1996).  Kootenai County by itself, exclusive of the Sheriff's Department, is the proper legal entity to be sued in this type of case. Therefore, as a matter of law, the claims against Defendant Kootenai  County Sheriff's Department must be dismissed as Plaintiff has named the improper legal entity.


   F.  Kootenai County

   Plaintiff is proceeding as a pro se litigant in this case.  Therefore, the Court will liberally construe the pleadings.  Tucker v. Carlson, 925 F.2d 330 (9th Cir. 1991).  Even assuming Plaintiff had named Kootenai County as a defendant in this case, the Court would still dismiss the claims as Plaintiff has failed to allege the requisite facts to hold a municipality liable under § 1983.

As to the county, a municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer. Monell v. Dept. of Social Services, 436 U.S. 658 (1978).  Municipalities can only be held liable "if either a policy or custom leads to the violation of the constitutional right." Mason v. City of Camas, 2006 WL 2871832 (W.D. Wash. Oct. 6, 2006) (citing Monell, 436 U.S. at 690-91).  To establish liability, a plaintiff must "allege that the action inflicting injury flowed from either an explicitly adopted or tacitly authorized city policy." Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986).  This requires the plaintiff establish evidence of a "formal policy" or "widespread practice" by the county.  Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924, 929 (9th Cir. 2001).

A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Gillete v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992).  However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellsenburg, 869 F.2d 1230, 1233 (9th Cir. 1989).  Additionally, it must be shown that it was the municipality's *deliberate* conduct that was the moving force behind the injury alleged.  Bd. of the County Comm'rs of Bryan County, Okla. vs. Brown, 520 U.S. 397, 397 (1997) (emphasis in original).

In this case the Court has found the three alleged constitutional violations did not rise to the level of a constitutional violation against Cutler.  Further, there is no evidence of repeated constitutional violations by Defendants. While it is true Plaintiff has submitted affidavits of inmates stating jail staff regularly used tasers and bragged about it.  The inmate affidavits are based on hearsay and are not evidence that tasers were used in an unconstitutional manner, only that tasers were regularly used.  The Sheriff's Department had a policy regarding the use of tasers and Plaintiff has not shown any violation of the existing policy when Deputy Moline fired his taser to break up an inmate fight.  The affidavits indicate only deputies trained in taser use were allowed to carry and use tasers in the jail.

In reading Plaintiff's Complaint liberally, Cutler appears to advances a couple of two theories of municipal liability: (1) failure to train and supervise and (2) negligent hiring, retention and failure to discipline or take corrective actions. "A municipality's failure to train an employee who has caused a constitutional violation can be the basis of a § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact."  Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006).  Here, Cutler appears to allege that the Sheriff's Department failed to train or supervise its officers but has failed to produce any specific evidence of a training or supervision policy that led to a constitutional violation in this case.  In fact, there is no evidence which shows that the officers were not reasonably and properly instructed on how and when to discharge a taser.  Nor has Cutler provided

evidence that the actual training received created a widespread practice or repeated constitutional violations that errant officers were not disciplined for.  To the contrary, Defendants have provided evidence that their actions were consistent with department policy and procedures.

Cutler also fails to provide any explanation as to how the Sheriff's Department's policies caused his alleged constitutional violations, and offers no evidence of a custom of past incidents of the County allowing its Sheriff's Deputies to use excessive force through the use of tasers. The mere fact that force is authorized by the policies does not equate to a showing that the policies caused the alleged unconstitutional deprivation.

The Court finds that Cutler has failed to carry his burden to establish via evidence that the municipality had a policy or custom that was the moving force behind the alleged constitutional violations.  On the facts presented, the Court finds there is no genuine issue of material fact with respect to the failure to train, supervise, discipline or negligent hiring and retention, and grants summary judgment on any claims against the Sheriff's Department or the County.

G.  Sheriff Watson

Defendant Sheriff Watson was sued in both  his official capacities as Sheriff and in his individual capacity.  Cutler appears to claim the Sheriff had the responsibility and authority to hire, train, supervise officers, and who set and enforce the Sheriff Department's policies and procedures.   First, Cutler's claims

Page 27

against Sheriff Watson in his official capacity is dismissed because the proper defendant is Kootenai County—the responsible party for any damages awarded. The Court further finds Cutler has failed to set forth any evidence that Moline and Mortensen were not properly trained or supervised by the Sheriff , so this claim must be dismissed as to the Sheriff.  Moreover, since the Court determined no constitutional violations rose to the level of a constitutional violation, the Sheriff cannot be held liable for his employees actions.

The Court will now analyze whether the Sheriff  may be held personally liable. "A supervisor can be held liable for excessive force under the Fourth Amendment if he or she was personally involved in depriving a plaintiff of constitutional rights, or if there is sufficient causal connection between the wrongful conduct of the supervisor and the violation of the constitutional right." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). Personal liability of Sheriff Watson in his individual capacities may arise only when (1) it is his own "culpable action or inaction in the training, supervision or control of subordinates" that caused the constitutional injury "for which they "acquiesce[d] in the constitutional deprivations of which [the] complaint is made;" or that (2) their conduct showed a "reckless or callous indifference to the rights of others." Phillips v. City of Fairfiled, 406 F. Supp. 2d. 1101, 1116 (E.D. Cal. 2005) (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

To establish a causal connection between Sheriff Watson's actions and the alleged constitutional violation, Cutler must provide evidence that Sheriff Watson

Page 28

"set in motion a series of acts by others, knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict the constitutional injury." Larez, 946 F.2d at 646.  Here, Cutler does not allege Sheriff Watson was personally involved in the alleged application of excessive force.  Moreover, there is no evidence that establishes the requisite causal connection showing a moving force, or that the supervisory officials implemented any policy so deficient that the policies themselves are unconstitutional; thus, summary judgment as to Sheriff Watson is granted.

## CONCLUSION

The Court takes serious the Plaintiff's alleged constitutional violations. However, under the particular facts of this case, the Court finds summary judgment should be granted in Defendants' favor as even taking the Plaintiff's version of the facts at true, they simply do not support a finding that a constitutional violation has occurred.  Plaintiff was shot with a taser, but there is no evidence that he was intentionally shot to inflict pain due to a malicious and sadistic motive on the part of the Deputy Moline.  The Plaintiff has also failed to show the jail's policy on the use of tasers was a constitutional violation.  Plaintiff appears to have hurt his left hand, however, Plaintiff has failed to establish via evidence that he made written requests for medical treatment of his hand on January 6 -8, 2007.  Instead, he raised the issue when he reached IDOC's custody on January 23, 2007.  Whether the IDOC has provided proper medical care for his hand is not the legal question before this Court.  The question before this Court is

Page 29

did Kootenai County jail staff act with deliberate indifference to Plaintiff's medical needs on January 6 -8, 2007, and the Court again finds there is simply no evidence to create a genuine issue of material fact that medical needs were ignored.  Finally,the Court is very concerned if Plaintiff's claim of being held naked in a cell is true, but even if true, the claim he was denied clothes for 16 hours has not been shown to have harmed Plaintiff in any manner.  The Court finds the alleged confinement conditions were *de minimus* based on the length of time they occurred and the single isolated incident alleged by Plaintiff.  Because the Court finds the Defendants have not violated Plaintiff's constitutional rights, the case must be dismissed.

## ORDER

Being fully advised in the premises, the Court hereby orders that:

1) Defendants' renewed motion for summary judgment (Docket Nos. 37 and 56) are GRANTED.  The Plaintiff's claims are dismissed and the case is closed.

2) Plaintiff's motion for appointment of counsel (Docket No. 65) is DENIED.

3) Plaintiff's motion for an order to show cause (Docket No. 62) is DENIED WITHOUT PREJUDICE.  Plaintiff is instructed to attempt to work out his problem with partial payments with the Idaho Department of Correction to

ensure compliance with this Court's previous order, Docket No. 11, regarding the

collection of partial payments from Plaintiff's prison trust account for the filing fee

of $350.00.

      SO ORDERED.

DATED: **May 19, 2010**

Honorable Edward J. Lodge
U. S. District Judge